# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATALIN HORVATH,<br><br>           Petitioner,<br><br>   v.<br><br>INS,<br><br>           Respondent. | 1:05-cv-00041-REC-TAG-HC<br><br>ORDER DENYING MOTION FOR IMMEDIATE RELEASE (Doc. 62)<br><br>ORDER DENYING MOTION FOR RELEASE (Doc. 51) |

     Petitioner, currently in the custody of the Bureau of Immigration and Customs Enforcement ("ICE") and proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, on January 10, 2005. (Doc. 1).

### **PROCEDURAL BACKGROUND**

     In her petition, Petitioner alleges that she was first detained by ICE on August 20, 2004, and has been detained in ICE custody ever since. (Doc. 1). Petitioner asserts that, after her arrival in this country, she learned that, notwithstanding documents indicating she was born in Hungary, she was actually born in Russia, orphaned, and then adopted at the age of five by stepparents who raised her in Hungary. (Id.).

     Pursuant to an order of the Court, Respondent filed Petitioner's alien file on September 30, 2005. (Doc. 47). Subsequently, Petitioner filed several documents purportedly countering the information contained in her alien file. (Docs. 48, 49). In those documents, Petitioner made various allegations related to the accuracy of some documents in her alien file (Doc. 49, pp. 1-9),

the likelihood of her being successfully removed to Hungary (id. at pp. 14-18, 23), the omission of information from her alien file (id. at p. 19-20), and her continued protestation that she has cooperated with ICE but cannot speak Hungarian and will not sign documents written in Hungarian without the aid of an interpreter. (Id. at p. 9-12).

On October 27, 2005, the Court issued an Order to Show Cause why the Court should not require Respondent to provide an interpreter to assist Petitioner in the completion of documents necessary for her removal to Hungary. (Doc. 50). On November 28, 2005, Respondent filed a request for additional time to respond to the Order to Show Cause, indicating that it had already provided an interpreter for Petitioner, that Petitioner had completed the removal documents, but that more time was required in order for Respondent to provide the Court with a translation of Petitioner's documents and for the Hungarian consulate to make a decision concerning removal. (Doc. 52). On November 30, 2005 the Court granted Respondent's request for an extension of time until January 3, 2006. (Doc. 55). On November 21, 2005, Petitioner filed a motion for release, indicating that she had been provided an interpreter and therefore, due to her cooperation with authorities, she should be released from detention. (Doc. 51, p. 6).

On December 21, 2005, Petitioner filed a "Motion for Immediate Release Upon Respondent's Inability to Deport Me From the United States By January 3, 2006." (Doc. 62). In that motion, Petitioner requests that the Petition be granted and that the Court not grant Respondent any further extensions of time. (Id. at 13).

On December 22, 2005, Respondent filed its formal response to the Order to Show Cause, which included as an attachment an English translation of the documents completed by Petitioner. (Doc. 61, Exh. A). On December 23, 2005, Respondent filed a response to the instant motion. (Doc. 63). Attached thereto is a letter from the Hungarian consulate stating that, after a "long investigative process," the Hungarian government had "established" Petitioner's Hungarian citizenship "by the authentic Hungarian authority." (Id., Exh. A). The consulate's letter also indicated that the Hungarian government was issuing travel documents for Petitioner's removal to Hungary. (Id.). Respondent indicated that Petitioner would be removed to Hungary in January 2006. (Doc. 63).

**DISCUSSION**

As a threshold matter, the Court construes both Petitioner's December 21, 2005 motion for immediate release (Doc. 62) and her November 21, 2005 motion for release (Doc. 51) as motions for an expedited ruling on the habeas petition. The Court does so because it appears that the gravamen of both motions is Petitioner's request for an immediate decision regarding the merits of her habeas petition, which Petitioner believes would necessarily result in her release from ICE custody. (Doc. 51, p. 6; Doc. 62, pp. 12-14).

Although the Court is mindful of the priority that must be given to habeas cases brought by aliens alleging illegal detention by ICE, the Court does not have a special, expedited calendar for selected ICE cases to which it might transfer this case. Rather, the case will be decided in due course, and in a manner that is both fair and reasonable in light of the other ICE habeas cases the Court currently has on its docket as well as the demands of the Court's docket and its limited resources.

Additionally, it bears emphasis that Respondent timely filed its formal response to the Order to Show Cause on December 22, 2005. The Court is now reviewing those materials as well as those previously lodged with the Court by Respondent, including Petitioner's voluminous alien file, and also all documents previously supplied by Petitioner.

Moreover, the Court notes that Petitioner has misapprehended both the facts and the law she has used to support her motions to expedite. First, Petitioner has misapprehended the significance of the January 3, 2006 deadline in her most recent motion. (Doc. 62). The Court granted Respondent additional time, until January 3, 2006, within which to respond to the Order to Show Cause. The deadline has no additional significance beyond setting a date certain for Respondent to respond. Since Respondent has timely filed its formal response to the Order to Show Cause, that date is now meaningless. Certainly, January 3, 2006, was never intended by the Court, nor could it reasonably be construed, as a deadline within which Respondent must remove Petitioner. Thus, Petitioner's insistence that the Petition be granted because ICE cannot remove her before January 3, 2006 is a legal and factual non sequitur.

///

3

Second, Petitioner has repeatedly misapprehended the significance of the Supreme Court's holding in <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S.Ct. 2491 (2001), as it relates to her ongoing detention.  As this Court has previously explained, in <u>Zadvydas</u>, the Supreme Court held that the Immigration and Nationality Act's ("INA") post-removal-period detention statute does not permit indefinite detention, but instead "implicitly limits an alien's detention to a period reasonably necessary to bring about that alien's removal from the United States." <u>Id</u> at 689.  Attempting to limit those occasions when the federal court would need to make such "difficult judgments," the Supreme Court set the "presumptively reasonable period of detention" at six months.  <u>Id</u>. at 701.  <u>Zadvydas</u>, however, does not *mandate* an alien's release from detention after six months; it merely establishes a rebuttable presumption that detention beyond six months is unreasonable.

Here, Respondent has recently provided the Court with a letter from the Hungarian consulate indicating that the Hungarian government has issued travel documents for Petitioner's removal to Hungary, and, indeed, Respondent has represented to the Court that Petitioner's removal to Hungary is imminent.  Petitioner has responded by re-asserting her Russian citizenship, her lack of ability to speak Hungarian, and her unsupported conviction that she will not be removed to Hungary in the reasonably foreseeable future.  All of this evidence must be carefully reviewed and weighed by the Court before it can make a determination regarding the merits of the Petition.

Finally, to further complicate the Court's task in this case, the Court must, as a predicate matter, ascertain whether and to what extent, Petitioner herself has been the cause of some or all of the delays encountered in effecting her removal.  In <u>Zadvydas</u>, the aliens were detained by ICE pursuant to 8 U.S.C. § 1231(a)(6), which provides that certain classes of aliens, including those removable due to criminal convictions and those deemed a risk to the community, may be detained beyond the standard ninety-day period.  <u>See id.</u> at 682.  However, as the Court has previously noted, until at least November 2005, when a Hungarian translator was supplied to Petitioner, Petitioner appears to have been held by ICE pursuant to 8 U.S.C. § 1231(a)(1)(C), which provides as follows:

4

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period *if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure* or conspires or acts to prevent the alien's removal subject to an order of removal. (Emphasis supplied).

As this Court has previously explained, the Ninth Circuit has held that § 1231(a)(1)(C) does *not* present the same constitutional concerns as § 1231(a)(6), because the risk of indefinite detention that motivated the Supreme Court's statutory interpretation in Zadvydas does not exist when an alien is the cause of his or her own detention. Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003).

In Pelich, petitioner, a native of Poland, legally entered the United States as a refugee, but later suffered a felony conviction and was detained by INS upon his release from prison. Id. at 1057. When the INS attempted to remove Pelich to Poland, the Polish consulate supplied a passport application that Pelich refused to complete, claiming his parents were German and therefore he was not a Polish citizen. Id.

The Ninth Circuit held that the petitioner "could not squeeze his case into the confines of Zadvydas." Id. at 1059. "Unlike the aliens in Zadvydas, Pelich has the 'keys [to his freedom] in his pocket' and could likely effectuate his removal by providing the information requested by the INS." Id. at 1060. Thus, the Ninth Circuit concluded that a petitioner who impedes removal efforts "has not met his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future." Id. See also, Lema v. INS, 341 F.3d 853, 857 (9th Cir. 2003)("We cannot know whether an alien's removal is a "remote possibility" until the alien makes a full and honest effort to secure travel documents. A particular alien may have a very good chance of being removed, but if that alien is refusing to cooperate fully with officials to secure travel documents, neither the INS nor a court can sensibly ascertain the alien's chance of removal.") In other words, an alien who impedes efforts at her removal has not met her burden of showing there is no significant likelihood of removal in the reasonably foreseeable future, and the petition for writ of habeas corpus must therefore be denied. Id. at 857; Pelich, 341 F.3d at 1060.

///

Thus, a serious question exists regarding whether and to what extent Petitioner has been responsible for the difficulties and delays in effecting her removal, which conceivably would foreclose a <u>Zadvydas</u> analysis of Petitioner's case. Reviewing Petitioner's lengthy alien file, the various documents and contradictory assertions made by both sides in their numerous responses to orders of this Court, and ultimately making a determination regarding the merits of the case cannot be done in haste, nor will it be done to merely satisfy an arbitrary deadline such as that suggested by Petitioner. As explained earlier, the Court does not have an expedited calendar for cases such as this, but will instead, consistent with the Court's own available resources, address the merits of the subject Petition when the Court has had an opportunity to properly review and analyze all of the issues.

## ORDER

Accordingly, the Court HEREBY ORDERS as follows:

1. Petitioner's motion for immediate release, filed December 21, 2005 (Doc. 62), which the Court construes as a motion for an expedited ruling, is DENIED;

2. Petitioner's motion for release, filed November 21, 2005 (Doc. 51), which the Court also construes as a motion for an expedited ruling, is DENIED.

IT IS SO ORDERED.

Dated:   **December 29, 2005**          **/s/ Theresa A. Goldner**
j6eb3d                                                     UNITED STATES MAGISTRATE JUDGE